## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KELLI THOMAS, | : | Case No. 3:15-cv-438 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.    Introduction

Plaintiff Kelli Thomas brings this case challenging the Social Security Administration's denial of his applications for a period of disability, Disability Insurance Benefits, and Supplemental Security Income.  He applied for benefits on April 26, 2012, asserting that he could no longer work a substantial paid job due to degenerative disc disease and osteoarthritis of the lumbar spine, the residual effects of surgery on his right foot, anxiety, and depression.  Administrative Law Judge (ALJ) Amelia G. Lombardo concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

The case is before the Court upon Plaintiff's Corrected Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #13), Plaintiff's Reply (Doc. #14), the administrative record (Doc. #7), and the record as a whole.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings.  The Commissioner asks the Court to affirm ALJ Lombardo's non-disability decision.

## II.  <u>Background</u>

Plaintiff asserts that he has been under a "disability" since August 1, 2011.  He was forty years old at that time and was therefore considered a "younger person" under Social Security Regulations.  He has a limited education.

### A.    **Plaintiff's Testimony**

Plaintiff testified at the hearing before ALJ Lombardo that he cannot work due to chronic lower back pain caused by arthritis, degenerative disc disease, and a bulging disc. (Doc. #7, *PageID* #95).  He also has chronic foot pain.  *Id.*  Plaintiff experiences pain every day.  *Id.* at 96.  Without medication, his pain is at eight or nine on a scale from one to ten.  *Id.*  With medication, his pain is generally down to four.  *Id.*  But, even with medication, he is "entirely out of commission" four to five days per week.  *Id.* at 104. During these days, he stays in bed all day.  *Id.*

Plaintiff's primary-care physician, Dr. Glenda Lopez-Blaza, prescribed pain medication until September 2013 when she told him she could no longer prescribe narcotic pain medication for him.  *Id.*  In June 2014, Plaintiff changed his primary-care physician to Dr. Marlin Twyman, who began prescribing medication for depression,

anxiety, high blood pressure, high cholesterol, and pain. *Id.* at 96. Between September 2013 and June 2014, he did not have pain medication, and he increased his use of alcohol "to try to dull the pain even more." *Id.* at 97. He scheduled foot surgery for the Tuesday after the hearing "to have artificial joints put in [his] right foot . . . ." *Id.* at 95.

Plaintiff testified that in 2011, he wanted to have back surgery but Dr. Moncrief, a neurosurgeon, advised against it because it could cause additional damage. *Id.* Dr. Moncrief "basically told [him he's] going to have to learn how to live with pain" and referred him to Dr. Townsend-Smith for spinal injections. *Id.* at 95-96. The injections, however, did not help with the pain, and instead, Plaintiff takes Percocet three times per day. *Id.* at 96.

Plaintiff stated that he sought out mental-health counseling after he began having suicidal thoughts and people telling him "that they thought something was wrong with [him] mentally." *Id.* at 97. He was very argumentative and had a short fuse. *Id.* He also had frequent mood swings and depression. *Id.* He takes Fluoxetine for depression and Lorazepam for anxiety. *Id.* at 103. His psychological symptoms affect his ability to remember things, concentrate, and handle stress. *Id.* He also has difficulty getting along with people. *Id.*

Plaintiff worked for DPH Holdings (Delphi) from 1999 to 2006. *Id.* at 94. He did assembly-line work and occasional forklift operations. *Id.* He then worked for Appvion (Appleton Paper Mill) from 2008 to 2011, when he went on sick leave. *Id.* In 2012, he was laid off. *Id.* He did physical labor and occasionally operated a forklift. *Id.* at 95.

3

Plaintiff testified that he lives in an apartment with a roommate.  *Id.* at 93-94.  He has four children, one of whom lives in Dayton and three of whom live in Yellow Springs with their mother.  *Id.* at 94.  He stated that he can walk for a couple blocks at one time but, "Every step is difficult."  *Id.* at 98.  If he stands for more than thirty to thirty-five minutes, his "legs get weaker and they swell from the knees down."  *Id.* at 98-99.  If he sits for more than forty-five minutes, it aggravates his back.  *Id.* at 99.  His hands are "weaker than they've ever been," but he can bath and feed himself.  *Id.*  He can lift five to ten pounds.  *Id.*  He is not able to help with chores around his apartment.  *Id.* at 100.

Plaintiff stated that during a typical day, he lays around a lot, listening to music or watching television.  *Id.*  He does not shower every day because it hurts, but he showers a few times per week.  *Id.*  He does not cook.  *Id.*  Instead, he heats up food in the microwave and eats lunchmeat.  *Id.*  He does not go grocery shopping.  *Id.*  He has a driver's license but does not have a car.  *Id.* at 101.  He usually takes the bus to get around.  *Id.*

### B.    Medical Opinions

#### i.    Dr. Glenda Lopez-Blaza

Plaintiff's primary-care physician, Dr. Lopez-Blaza, completed a basic medical questionnaire on July 12, 2013.  *Id.* at 508.  She opined that he could stand/walk for one hour without interruption for a total of four hours in an eight-hour workday, and he could sit for two hours without interruption for up to four hours.  *Id.*  He could lift/carry six to ten pounds frequently.  *Id.*  He is moderately limited in his ability to push/pull and reach

and is extremely limited in his ability to bend. *Id.* She concluded that he is unemployable and his conditions would last more than twelve months. *Id.*

### ii. Record-Reviewing Physicians

On August 28, 2012, Dr. Anne Prosperi reviewed Plaintiff's records. *Id.* at 110-20. She opined that he could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. *Id.* at 116. He could stand and/or walk for a total of six hours in an eight-hour workday and sit for six hours. *Id.* He could occasionally climb stairs, ramps, ladders, ropes, and scaffolds, stoop, crouch, and crawl and frequently balance and kneel. *Id.* at 117. She concluded that he was not disabled. *Id.* at 119.

On December 6, 2012, Dr. William Bolz reviewed Plaintiff's records and reached the same conclusions as Dr. Prosperi. *Id.* at 134-48. Dr. Bolz added that he should avoid concentrated exposure to hazards such as machinery and heights. *Id.* at 143.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

6

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47

(6th Cir. 2004)).

## IV.   **The ALJ's Decision**

As noted previously, it fell to ALJ Lombardo to evaluate the evidence connected

to Plaintiff's application for benefits.  She did so by considering each of the five

sequential steps set forth in the Social Security Regulations.  *See* 20 C.F.R. §§

404.1520, 416.920.[2]  She reached the following main conclusions:

Step 1:     Plaintiff has not engaged in substantial gainful employment since
            August 1, 2011.

Step 2:     He has the severe impairments of degenerative disc disease and
            osteoarthritis of the lumbar spine; the residual effects of surgery on
            his right foot; anxiety; and depression.

Step 3:     He does not have an impairment or combination of impairments that
            meets or equals the severity of one in the Commissioner's Listing of
            Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:     His residual functional capacity, or the most he could do in a work
            setting despite his impairments, *see Howard v. Comm'r of Soc. Sec.*,
            276 F.3d 235, 239 (6th Cir. 2002), consists of "light work . . . except
            that he must be allowed to alternate sitting and standing positions
            every 30 minutes for a brief period of 1-to-2 minutes to relieve the
            stress and strain on his back.  He is also restricted to occasional
            postural activities such as bending, stooping, kneeling, crouching, and
            crawling.  He cannot climb ladders, ropes, or scaffolds, but he can
            occasionally climb ramps or stairs.  He cannot work at heights or
            around hazardous machinery.  He is limited to performing unskilled
            work as defined in the Dictionary of Occupational Titles, and he is
            restricted to low stress work which, for this claimant, is defined as
            meaning that he cannot be subject to assembly-line production quotas
            or fast-paced work.  He is also restricted to occasional contact with

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full
knowledge of the corresponding Supplemental Security Income Regulations.

> coworkers and supervisors, and he cannot have contact with the general public."

Step 4:     He is unable to perform any of his past relevant work.

Step 5:     He could perform a significant number of jobs that exist in the national economy.

(Doc. #7, *PageID* #s 69-80).  These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability.  *Id.* at 79.

## V.     <u>Discussion</u>

Plaintiff contends that the ALJ erred in rejecting his treating physician's opinion and in finding that he was not credible.  The Commissioner maintains that the ALJ properly evaluated the opinion evidence and substantial evidence supports the ALJ's finding that Plaintiff was not fully credible.

### A.     **Dr. Lopez-Blaza's Opinion**

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions.  "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule."  *Rogers,* 486 F.3d at 242 (citations omitted).  The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

ALJ Lombardo gave Dr. Lopez-Blaza's opinions that Plaintiff is unable to work and is unemployable for twelve or more months little weight. (Doc. #7, *PageID* #77). She explained,

> Although Dr. Lopez-Blaza is a "treating source," her opinion is not well-supported by the medically acceptable clinical and laboratory diagnostic results which have been summarized herein above, and her opinion is inconsistent with that evidence. In stating that the claimant cannot work, she has, of course, invaded the province of the Commissioner.

*Id.* She notes that Dr. Lopez-Blaza's "specific assessments of the claimant's ability to engage in work activity [] are inconsistent with an inability to work and, in fact, are very nearly consistent with the determination of the claimant's residual functional capacity

9

herein." *Id.* at 77.  Finally, the ALJ asserts that the MRI she relied on only shows a mild

condition of degenerative disc disease and osteoarthritis.  *Id.*

Substantial evidence in the record supports the ALJ's assessment of Dr. Lopez-

Blaza's opinion.  The ALJ correctly recognizes that Dr. Lopez-Blaza's opinion that

Plaintiff is unable to work is an opinion on an issue reserved to the Commissioner.  As a

result, it cannot be given controlling weight.  Soc. Sec. Rul. No. 96-5p, 1996 WL 374183,

at *3 (Soc. Sec. Admin. July 2, 1996) ("[T]reating source opinions on issues that are

reserved to the Commissioner are never entitled to controlling weight or special

significance.").  However, this does not mean that her opinion can be ignored.  The ALJ

must still weigh her opinion under the factors in 20 C.F.R. § 404.1527(d).  *Id.*

ALJ Lombardo weighed Dr. Lopez-Blaza's opinion under several factors.  She

first addressed supportability.  "The more a medical source presents relevant evidence to

support an opinion, particularly medical signs and laboratory findings, the more weight

[the Social Security Administration] will give that opinion."  20 C.F.R. § 404.1527(c)(3).

The ALJ found that her opinion is not supported by her treatment notes, her other

assessments of Plaintiff's abilities, or any other doctors' opinion or treatment notes.

Dr. Lopez-Blaza's treatment notes contain very little information.  Although she

routinely noted Plaintiff's lower back pain, she failed to provide any further explanation.

Thus, it is unclear if she examined his back at each appointment or if she relied solely on

his statements.  Similarly, the basic medical assessment she completed contains very little

substantive explanation.  When asked for the observations or medical evidence that led to

her findings, she only cites to an "MRI scan of lumbar spine."  (Doc. #7, *PageID* #508).

10

As the ALJ observed, although the MRI may indicate a need for restrictions, it alone does not support her opinion that Plaintiff is unemployable.

Dr. Lopez-Blaza's opinion is not supported by any other physician's opinion or treatment notes. "The objective medical evidence from Dr. Moncrief, Dr. Smith, and Dr. Lopez-Blaza, including MRI and clinical examinations, shows only mild to moderate condition[s] in [Plaintiff's] spine with no muscle weakness, atrophy, reflex or neurological deficits, or significant limitation in range of motion." *Id.* at 75. Further, Dr. Prosperi and Dr. Bolz, the State agency record-reviewing physicians, concluded that Plaintiff was not disabled, and no other physician provided an opinion regarding Plaintiff's physical impairments. Treatment notes from other physicians do not support Dr. Lopez-Blaza's opinion either. For example, Dr. Moncrief, the neurosurgeon who reviewed Plaintiff's MRIs, indicated that he has mild lumbar degenerative disc disease, disc bulge, and lumbar facet arthropathy L4-5 and L5-S1. He recommended only conservative treatment, including lumbar facet injections and physical therapy. And, Dr. Moncrief further noted that Plaintiff's pain is alleviated by medication.

Plaintiff asserts that "[t]he ALJ engaged in picking and choosing the medical evidence that supported her determination of nondisability, citing only the parts of Dr. Moncrief's diagnosis and findings that supported her decision." (Doc. #9, *PageID* #733) (citations omitted). This assertion lacks merit. The ALJ thoroughly addressed Dr. Moncrief's diagnosis and findings at Step Two. (Doc. #7, *PageID* #s 71-72). At Step Four, the ALJ referred frequently to her prior summary.

The ALJ also found that Dr. Lopez-Blaza's opinion that Plaintiff is unemployable is not consistent with the record.  "[T]he more consistent an opinion is with the record as a whole, the more weight [the Social Security Administration] will give to that opinion. 20 C.F.R. § 404.1527(c)(4).  No other physician concluded Plaintiff is unemployable, and notably, other physicians regularly assessed normal physical exam findings.  For example, Dr. Moncrief noted, "No muscle atrophy is present. . . .  Straight leg raising is negative."  (Doc. #7, *PageID* #271).  Although notes from Sycamore Hospital indicate that Plaintiff had "[d]iffuse tenderness across the lumbar region" in June 2012, by November 2013, notes show no tenderness or CVA tenderness."  *Id.* at 434, 513. Further, in May 2014, notes indicate no tenderness or CVA tenderness and "[n]egative straight leg raise bilaterally."  *Id.* at 546.

As the ALJ observed, the remainder of Dr. Lopez-Blaza's opinions are relatively consistent with the State agency physicians' opinions.  For example, Dr. Lopez-Blaza and the State agency physicians found that Plaintiff can lift/carry six to ten pounds frequently. They also agreed that his ability to bend was restricted, with Dr. Lopez-Blaza finding that he was extremely limited and the State agency physicians finding that he could only occasionally stoop (i.e., bend at the waist).

Plaintiff asserts that the ALJ erred in giving the State agency physicians significant weight.  (Doc. #9, *PageID* #735).  Specifically, Plaintiff alleges that the ALJ failed to weigh their opinions under the factors and gave far more scrutiny to Dr. Lopez-Blaza's opinion than to theirs.  *Id.*  This is not entirely accurate.  The ALJ noted that their opinions are consistent with objective medical evidence and "they provided a persuasive

12

supporting rationale for their opinion."  (Doc. #7, *PageID* #76).  Substantial evidence supports these findings.

The State agency physicians' opinions are relatively consistent with Dr. Lopez-Blaza's assessment, excluding her conclusion that Plaintiff is unemployable.  In addition, the State agency physicians did provide some detailed explanations for their opinions—explanations that far exceed Dr. Lopez-Blaza's.  Dr. Prosperi, when asked to cite specific facts that she relied on in reaching her conclusions, responded in part with, "10-11 MRI showed DDD, greatest at L4-5. 11-11 Neuro consult showed steady but guarded gait.  No weakness in lower extremities or atrophy. . . ."  *Id.* at 116.  Most significantly, despite giving their opinions significant weight, the ALJ added restrictions to Plaintiff's residual functional capacity based on his testimony at the hearing, subjective allegations, and to account for the time between their review and her decision.

Additionally, the ALJ did not completely reject Dr. Lopez-Blaza's opinion.  The residual functional capacity accounts for most of her limitations.  For example, Dr. Lopez-Blaza indicates Plaintiff can stand/walk for one hour without interruption and sit for two hours without interruption.  The ALJ shortened that time, concluding that Plaintiff must be allowed to alternate between sitting and standing every thirty minutes.

The ALJ acknowledges that Dr. Lopez-Blaza was Plaintiff's treating physician.  But, the ALJ fails to mention that Dr. Lopez-Blaza's treatment notes date back to 2007 and she regularly treated him through 2014.  *Id.* at 423-550.  Nevertheless, the ALJ provided good reasons for the weight she assigned Dr. Lopez-Blaza's opinions, and those reasons are supported by substantial evidence in the record.

Accordingly, Plaintiff's challenge to the ALJ's assessment of Dr. Lopez-Blaza's opinion lacks merit.

### B.     Plaintiff's Credibility

The ALJ evaluated Plaintiff's credibility and found that his statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Doc. #7, *PageID* #75).  Plaintiff asserts that because the 2011 MRI establishes a medically determinable impairment, his pain by itself can be the basis for a finding of disability.  (Doc. #9, *PageID* #736); *King v. Heckler,* 742 F.2d 968, 974 (6th Cir. 1984) ("It is well settled that pain alone, if the result of a medical impairment, may be severe enough to constitute disability") (citations omitted).  However, when objective medical evidence does not substantiate an individual's statements about pain, the ALJ must consider all the evidence in the record and make a finding on the credibility of the individual's statements.  Soc. Sec. Rul. No. 96-7p, 1996 WL 374186, at *1 (Soc. Sec. Admin. July 2, 1996)).[3]  "[A]n ALJ's credibility determination about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'"  *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 542 (6th Cir. 2007) (citing *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003)).

The ALJ considered several factors in evaluating Plaintiff's credibility.  She found, "The objective medical evidence in the record . . . does not establish a condition

---

[3] The Social Security Administration issued Soc. Sec. Rul. No. 16-3p, effective March 16, 2016, which supersedes Soc. Sec. Rul. No. 96-7p.  At the time of the ALJ's decision in this case, Soc. Sec. Rul. No. 96-7p was still in effect.

that would [preclude Plaintiff] from performing the amount of lifting, carrying, standing, walking, and sitting that would preclude him from performing a range of work at the light exertion level." (Doc. #7, *PageID* #75). She noted that Dr. Moncrief, Dr. Townsend-Smith, and Dr. Lopez-Blaza all regularly noted no muscle weakness, atrophy, reflex or neurological deficits or significant limitations in range of motion. *Id.*

The ALJ also addressed Plaintiff's treatment. Dr. Moncrief, a neurosurgeon who examined Plaintiff's MRIs, only recommended conservative care, including medication and occasional facet injections. She notes that the medication is generally "effective with no adverse side effects . . . ." *Id.* Plaintiff testified that medication takes his pain from an eight or nine (on a scale from one to ten) down to around four. *Id.* at 96. Similarly, Dr. Moncrief notes that Plaintiff reported to him that medication alleviates his symptoms. *Id.* at 369. This conservative treatment is not consistent with Plaintiff's assertion that he cannot work.

Finally, the ALJ did not completely reject Plaintiff's testimony. Notably, based on his testimony, at least in part, she added restrictions such as the sit/stand option. She also added postural and climbing restrictions to avoid an exacerbation of his back pain. *Id.* at 75. Substantial evidence supports the ALJ's assessment of Plaintiff's credibility. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997) ("The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis.") (citation omitted).

Accordingly, Plaintiff's challenges to the ALJ's decision lack merit.

**IT IS THEREFORE RECOMMENDED THAT**:

1.    The ALJ's non-disability decision be affirmed; and

2.    The case be terminated on the Court's docket.

Date: January 17, 2017                    *s/Sharon L. Ovington*
                                          Sharon L. Ovington
                                          United States Magistrate Judge

16

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).